PEDRO COLÓN ET UX., Plaintiffs and Appellees *v.* THE IMPE-RIAL GUARANTEE & ACCIDENT INSURANCE COMPANY OF CANADA ET AL., Defendants and Appellants.

No. 10631.   Argued September 30, 1952.—Decided October 7, 1952.

*F. Fernández Cuyar* for appellants.   *Bolívar Pagán* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

In an action for damages brought by Pedro Colón and

Graciela Ortiz against Margarita Cintrón and The Imperial Guarantee & Accident Insurance Company of Canada, the lower court entered judgment granting the complaint and ordering the defendants to pay to the plaintiffs the sum of $10,000 plus costs and $600 as attorney's fees.[1] In support of its judgment the court delivered a lengthy opinion which contains the following findings of fact:

"1—On Saturday, July 9, 1949, between 6:00 p.m. and 7:00 p.m., the motor vehicle, a bus, 1949–50 license number OP-30039, belonging to the defendant Margarita Cintrón, was engaged in a public service enterprise of the latter, in Patillas, Puerto Rico.

"2—At the aforesaid hour, day, and place said bus was being operated on the left-hand side of a straight stretch of Estrella Street, in Patillas, which is a residential and commercial street and which stretch was between 20 and 21 feet wide.

"3—The bus thus operated was being driven by Simón Cordero, a chauffeur, who then and there and when the accident hereinafter mentioned occurred was employed as such chauffeur by the defendant Margarita Cintrón and in the course of his employment with the latter.

"4—At the aforesaid hour, day, and place, and for a week, the bus had no claxon, horn, or warning signal, which fact was known to the defendant Margarita Cintrón and to the aforesaid chauffeur Simón Cordero.

"5—At the aforesaid hour, day, and place the bus was being operated by the aforesaid chauffeur from a seat about four feet away from the windshield, which fact was known to the defendant Margarita Cintrón.

"6—At the aforesaid hour, day, and place the steering wheel of said bus, instead of being on the left-hand side, was almost in the center of the bus, which fact was known to the defendant Margarita Cintrón.

"7—The fact that the chauffeur's seat and the steering wheel of the bus were in the position indicated in the preceding Findings of Fact numbers 5 and 6, respectively, considerably reduced, while driving the bus at the aforesaid hour, day, and place, Simón Cordero's peripheral and left lateral visibility within the

---

[1] According to the judgment, the insurer was liable for $3,000 only—its liability under the policy was limited to that amount—as well as for three tenths of the costs and attorney's fees.

area close to said vehicle, which fact was known to the defendant Margarita Cintrón and to the aforesaid chauffeur Simón Cordero.

"8—At the aforesaid hour, day, and place, and while said bus was being driven at a speed between 15 and 18 miles per hour, that is, between 25 and 30 kilometers per hour, the minor Ivette Socorro Colón Ortiz, three years old, was caught by the left rear 'twin' tires of said bus which passed over the minor's head fracturing her skull, as a result of which she died instantly.

"9—The accident happened as follows: Gervasio Díaz, an adult, a store clerk, was taking the minor, at the request of co-plaintiff Graciela Ortiz, the minor's mother, to the child's paternal aunt, who was shopping in a store on Estrella Street which was on the right-hand side of the bus. Gervasio was asked by said aunt to cross the street, which he did, holding the minor by the hand in order to buy some cookies for the child. After complying with that request, Gervasio came out of the store and holding the minor by the hand on his right side, crossed the sidewalk on the left side of the bus in order to cross Estrella Street again and leave the minor with the aunt. As Gervasio stepped down from the sidewalk to the street with the minor, the bus, which was coming along the aforesaid left-hand side at a distance of approximately 3 feet from the curb at the above-mentioned speed of 15 to 18 miles per hour, was about 12 feet away from Gervasio and the minor. After Gervasio proceeded to cross the street he immediately realized the proximity of the bus and stopped with the minor, holding her hand, on his right side, about two feet away from the curb, making way for the bus to pass. · When the front part of the motor and the chassis of the vehicle were passing in front of Gervasio and the minor, the bus was still going at the aforesaid speed and was about three feet away from the curb of said sidewalk. After that part of the motor and of the chassis had passed by Gervasio and the minor, the latter suddenly darted towards the left side of the bus, colliding against the left rear part of the vehicle, and receiving a heavy blow in her thigh, which knocked her down, the left rear 'twin' tires of the bus then passing over her head with the result mentioned in the preceding finding of fact.

"10—Notwithstanding that the accident happened on a Saturday in a residential and commercial street, at that time and shortly before, the aforesaid street was completely expedite

and free from persons, vehicles, and animals, and all sorts of obstructions insofar as the front of said bus was concerned.

"11—There was no need or justification whatsoever for said bus to be driven on the left-hand side of said Estrella Street at any of the moments referred to.

"12—When Gervasio Díaz crossed the aforesaid sidewalk with the minor, neither the latter nor Gervasio was seen by Simón Cordero, the chauffeur who was driving said bus, but both were at that moment within said chauffeur's peripheral or lateral visibility despite the defects of the vehicle pointed out in the preceding findings of fact numbers 5, 6, and 7.

"13—Just as Gervasio Díaz stepped down from said sidewalk to the street with the minor and stopped with the latter upon realizing the proximity of the bus, neither the minor nor Gervasio could be seen by said chauffeur, because none of them were just then within the chauffeur's peripheral or lateral visibility on account of the aforesaid defects of the vehicle, but had there been no such defects, Gervasio, as well as the minor, would have been at that moment within said visibility.

"14—The minor Ivette Socorro Colón Ortiz always lived with her mother, the coplaintiff Graciela Ortiz, and was a legitimate daughter of the latter and her husband, the coplaintiff Pedro Colón.

"15—The plaintiffs are the sole and universal heirs of the minor.

"16—Although when the minor died and ever since the coplaintiff Graciela Ortiz was pregnant of the child, the plaintiffs were estranged, the coplaintiff Pedro Colón maintained relations with the minor, visiting and supporting her.

"17—When the accident occurred the liability of the codefendant The Imperial Guarantee & Accident Co. of Canada was in force, by virtue of an insurance policy covering the injuries caused by said vehicle to any person and his heirs up to $3,000, regardless of whether one or more persons were injured or killed in an accident.

"18—By reason of the death of their aforesaid child as a result of said accident, the plaintiffs have suffered mental anguish which, taking into consideration all the attendant factors of valuation, amounts by way of damages to the sum of $10,000.00."

The defendants allege on appeal that "There is no controversy as to the facts. The appellants accept as correct

the findings of the trial judge, for which reason the transcript of the evidence has not been sent up. They claim, nevertheless, that said findings show, as a question of law, that the judgment rendered is erroneous and unfair." And they give two reasons wherefore in their opinion the judgment appealed from must be reversed. Textually copied, said reasons are:

### "First Error

"Taking as true the facts as found by the lower court, the latter erred in holding that such facts constitute actionable negligence: that is, it erred in concluding that such facts were the proximate cause of the accident suffered by the child of the plaintiffs.

### "Second Error

"Accepting as true the facts established by the trial judge, the latter erred in his conclusion of law to the effect that the custodian of plaintiff's child was not guilty of negligence and carelessness. Such negligence and carelessness may be charged to the plaintiffs and prevent them from recovering."

■ The appellees have insisted emphatically, however, in a motion to dismiss as well as in their brief as to the case on its merits and in their oral argument during the hearing, that the errors thus assigned can not be considered by us inasmuch as the appellants have not sent up the transcript of the evidence. They are right. This Court has decided in innumerable cases that the findings of the lower court set forth in the opinion can not substitute the transcript of the evidence, the bill of exceptions, or the statement of the case, when the errors assigned are directed to the weighing or efficacy of the evidence.

In *Torres v. Sancho, Treas.*, 51 P.R.R. 16, 19, referring to a question similar to that involved here, we said:

"In discussing the first assignment of error, the appellees maintain that there is no basis for considering the same, as the transcript of the record filed by the appellant does not contain the evidence. And such is the case indeed. *It makes no difference that said evidence is set forth and analyzed by the judge*

*in his opinion. The opinion of the court is not the mode authorized by law of sending up to the appellate court the evidence heard at the trial. It can not be taken as a substitute for a bill of exceptions or statement of facts or statement of the case or transcript of the evidence."* (Italics ours.)

In *Guerra et al.* v. *Acha et al.*, 27 P.R.R. 631, the statement of the case was not sent up either, but taking as true the facts as found by the trial judge in his opinion, the appellants maintained that the judgment should be reversed. This Court stated:

"In view of the foregoing the question arises whether, notwithstanding the fact that there is no statement of the case, we may consider this appeal, as the appellants have submitted it, on the basis of the findings of the trial court in order to ascertain whether the law was correctly applied.

*"That is not a new question in this court,* for in the case of *Rubio* v. *Charvounier,* 20 P.R.R. 299, after holding that we could not take into consideration the statement of the case filed because it was signed by counsel for the appellant only and was not approved by the trial judge, we considered the question of whether we could decide the appeal on the basis of the findings set out in the opinion of the trial court and on that point we said:

*" '. . . the trial court only set forth its special findings from the evidence as a whole, and as its weighing of the evidence may be erroneous or deficient, this cannot be taken as a basis for reversing the judgment as prayed.' "* (Italics ours.)

Furthermore in *Suc. of Orrach* v. *Suc. of Polanco,* 17 P.R.R. 695, citing from the syllabus, we said:

*"The omission of a statement of facts cannot be supplied by the facts set forth in the opinion of the trial court, inasmuch as it does not appear that such facts are all those which were brought out at the trial, . . ."* (Italics ours.)

See also *Torres* v. *Vidal,* 28 P.R.R. 390; *Albite* v. *Lecumberri,* 22 P.R.R. 795; *Rubio* v. *Charvounier,* 20 P.R.R. 299; *Marrero* v. *López et al.,* 15 P.R.R. 746; *cf. Municipality* v. *Public Service Comm.,* 53 P.R.R. 263, 275.

■■ The above-cited cases were decided prior to the effectiveness of the Rules of Civil Procedure.[2] This, however, does not change the situation. In accordance with the provisions of § 227 of the Code of Civil Procedure, as amended by Act No. 25 of June 12, 1925:

"At the final hearing of any case in a district court, *the judge thereof shall render and file at the time of the sentence, a written opinion which shall be attached thereto, wherein he shall state separately and briefly the facts he considers proved and his juridic reasons for his decision.* When the findings of fact are based on conflicting evidence the judge shall state the reasons he may have had for deciding the conflict as he did; *and, in case of appeal, the Supreme Court shall weigh said evidence and determine if the findings were warranted or not."* (Italics ours.)

Referring to that Section after the aforesaid amendment and after citing at length the case of *Paganacci* v. *Lebrón*, 24 P.R.R. 743, in *Conde* v. *Garratón*, 40 P.R.R. 310, 316, this Court said:

"Pursuant to the amendment, the district judge must render an opinion and state therein the facts considered as proved and the juridical reasons for his decision, and he must also set forth his reasons for resolving conflicts in the evidence. *But that this should be required does not warrant the conclusion that, under the amendment, the opinion becomes a substitute for the evidence heard and must be considered as the only evidence in the case. In addition to the opinion of the court, the bill of exceptions, the statement of the case and the transcript of the evidence, on which are based the appealed judgments, continue to have legal existence and effect in Porto Rico; ..."* (Italics ours.)

Although Rule 52 (*a*) of the Rules of Civil Procedure[3] is not identical with § 227 as it existed originally or as

---

[2] September 1, 1943. See Rule 86.

[3] Rule 52 (*a*) provides:

"In all actions the court shall set forth the facts as found by it and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclu-

amended, it is very similar to the latter insofar as it requires the trial judge to set forth the facts as found by it. Nevertheless, any discrepancy between the context of Rule 52 (a) and § 227, as it reads now and as it read formerly, does not affect in any manner our conclusion herein. The Rules of Civil Procedure, applicable to ordinary civil actions such as the one involved here, keep silent as to the procedure to be followed in appeal by a party aggrieved by a judgment. Said Rules state most emphatically and clearly, under the title "appeals," that there are "no Rules 72 to 76, inclusive." This means, in our judgment, that the application, scope, and effect of the Rules of Civil Procedure end with the judgment, or with the order entered on motion for a new trial. See *Hernández* v. *Municipal Court*, 69 P.R.R. 827, 830; *Vigio* v. *Cartagena*, 70 P.R.R. 566, 568; *Collazo* v. *Puig & Abraham*, 70 P.R.R. 780, 781; *Rodríguez* v. *Fonalledas*, 71 P.R.R. 783, 785. The procedure to be followed by an appellant to perfect his appeal not having been altered in any manner whatsoever by the aforesaid Rules, the holdings of this Court in the cases cited above are squarely in point at present.

■ Undoubtedly, there are cases in which, because the errors assigned do not refer to the evidence offered and because merely questions of law arising from the judgment roll are raised therein, the transcript of the evidence need not be sent up. *West India Oil Co.* v. *De Castro*, 52 P.R.R. 506. However, such is not the case here. The two errors assigned by the appellants and their discussion thereof in their brief are directed to the legal effect of the evidence believed by the court. To consider them it would be necessary to have be-

sions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact based on oral testimony shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court."

830

fore us the evidence offered.　Such evidence, we repeat, has not been sent up.

The judgment appealed from will be affirmed.

Mr. Chief Justice Todd, Jr., did not participate herein.